IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**LAMONT HARRIS,**

   **Plaintiff,**

v.                             Civil Action No. 3:18cv588

**MARINER FINANCE LLC,**

   **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on five motions:

(1) Defendant Mariner Finance, LLC's ("Mariner") Motion to Enforce the Parties' Agreement, Compel Arbitration, and to Dismiss the Amended Complaint (the "Motion to Compel Arbitration"),[1] (ECF No. 3);[2]

(2) Plaintiff Lamont Harris's Motion to Remand, (ECF No. 7);[3]

---

[1] Mariner filed the same document but entitled it a Motion to Dismiss for Lack of Jurisdiction (the "Motion to Dismiss"). (ECF No. 6.) Because the Motion to Dismiss and the Motion to Compel Arbitration are the same document and share the same memorandum in support, the Court will refer to the Motion to Compel Arbitration and the Motion to Dismiss jointly as the Motion to Compel Arbitration. Both documents included the necessary notice under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K) for the United States District Court for the Eastern District of Virginia.

[2] Plaintiff Lamont Harris responded, (ECF No. 7), and Mariner replied, (ECF No. 8).

[3] Harris included a document with his Response to the Motion to Compel Arbitration, which he entitled "Order Granting Motion to Remand and Granting Costs." (ECF No. 7.) The document appears to represent a proposed order and includes suggested findings about remanding this case to the Circuit Court for the City of Richmond. Because the Court must liberally construe Harris's *pro se* pleadings, the Court will construe this document as a Motion to Remand. *See Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

Mariner also appropriately construed this document as a Motion to Remand and responded. (ECF No. 10). Harris did not reply and the time to do so has expired.

 (3) Harris's Letter Motion, (ECF No. 9);[4]

 (4) Harris's Motion to Dismiss "Defendants Claims and Immediate Judgment in the Favor of the Plaintiff" ("Harris's Motion to Dismiss"), (ECF No. 11);[5] and,

 (5) Mariner's "Motion to Strike Plaintiff's 'Response in Support of Dismissal of Defendant's Claims and Immediate Judgment in Favor of the Plaintiff'" (the "Motion to Strike"), (ECF No. 13).[6]

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[7] For the reasons that follow, the Court will grant the Motion to Compel Arbitration and dismiss this action without prejudice. The Court will deny Harris's Motion to Remand and Harris's Letter

---

[4] Mariner responded to the Letter Motion. (ECF No. 12.) Harris did not reply and the time to do so has expired. Although Harris filed this motion in an improper format, the Court will construe the Letter Motion as a Motion to Supplement the Record.
 In the Letter Motion, Harris stated that he "included the original and only binding Contract provided from Mariner Finance LLC." (Letter Mot. 1, ECF No. 9.) Harris attached to the Letter Motion an unredacted version of the same contract that Mariner attached to its Motion to Compel Arbitration. Because, as explained below, Mariner considered some information included in the contract "personal identifiers" that must be redacted under Local Rule 7(C) for the Eastern District of Virginia, and Harris did not redact this information, the Court will deny the Letter Motion. *See* E.D. Va. Loc. Civ. R. 7(C).

[5] Harris did not designate this document as a formal motion and the Court's docket does not reflect it as such. Because the Court must liberally construe *pro se* pleadings, the Court will construe this filing as a Motion to Dismiss. *See Bracey*, 55 F. Supp. 2d at 421.
 Mariner also appropriately construed this filing as a motion and responded to it, (ECF No. 13). Harris did not reply and the time to do so has expired.

[6] Mariner filed the Motion to Strike, the same document as its response to Harris's Motion to Dismiss, in response to Harris's Motion to Dismiss. Although Harris subsequently filed a letter with the Court, (ECF No. 14), he did not reply to the Motion to Strike and the time to do so has expired.

[7] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Harris brings his four-count Amended Complaint alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 (the "FCRA"). (Not. Removal Ex. B "Amended Complaint," ECF No. 1-2.)

Motion. The Court will also deny as moot Harris's Motion to Dismiss and Mariner's Motion to Strike.

## I. Factual and Procedural History

### A. General Allegations and Procedural History[8]

In August 2013, Harris, a Virginia resident, served as a co-signor for a vehicle purchased at a Virginia car dealership, Auto By Design, LLC. (Am. Compl. ¶ 4; Mem. Supp. Mot. Compel 1, ECF No. 4.) As part of the vehicle purchase, Harris and the buyer entered into a Retail Installment Sale Contract (the "Loan Contract"), which allegedly contained an addendum entitled "Notice of Arbitration Agreement"[9] (the "Arbitration Agreement").[10] (Mem. Supp. Mot. Compel 1.)

On the same day that Harris and the buyer purchased the car, Auto By Design, LLC assigned the car loan to Mariner, a Maryland limited liability corporation. (*Id.*) Specifically, the

---

[8] Harris's Amended Complaint contains minimal factual allegations. Indeed, the Amended Complaint fails to describe any aspect of the alleged debt or the contract from which it allegedly arose. However, when a party brings a motion to dismiss for improper venue on the basis of a forum-selection clause, the United States Court of Appeals for the Fourth Circuit considers it under Federal Rule of Civil Procedure 12(b)(3). *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006). A Rule 12(b)(3) motion allows the court to consider evidence outside the pleadings. *Id.* Because an arbitration clause functions as a specialized forum-selection clause, *see Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365 n.9 (4th Cir. 2012), the Court will consider evidence outside the pleadings.

[9] The Arbitration Agreement provides that the majority of the disputes between the parties will be resolved by "<u>BINDING ARBITRATION</u>." (Arbitration Agreement 1, ECF No. 4-1 (emphasis in original).) The Arbitration Agreement details its terms including a 60-day period in which to reject the agreement. (*Id.*)

[10] Harris admitted that he signed the Loan Contract, but "denie[d] signing and agreeing to any arbitration contracts and/or oaths, deals, or conversations pertaining to arbitrate his claims against Mariner Finance, LLC." (Resp. Mot. Compel ¶¶ 2, 5, ECF No. 7.)

3

Loan Contract stated "Seller[11] assigns its interest in this contract to Mariner Finance." (Mem. Supp. Mot. Compel Ex. A "Loan Contract" 4, ECF No. 4-1.)

Harris alleges that the vehicle purchased through the Loan Contract "was repossessed and resold in 2015." (Harris's Mot. Dismiss 1–2, ECF No. 11.)

Harris's four claims arise out of Mariner's alleged violations of the Fair Credit Reporting Act (the "FCRA") when Mariner, among other things, furnished information about a debt Harris allegedly owed after he submitted "proof . . . to the contrary, as well as written notification from all 3 credit bureaus." (Am. Comp. ¶ 11.) Harris also states that Mariner violated the FCRA when it "failed to respond to . . . disputes," "illegally pulled his credit report without his permission," and "pulled" his "credit report without his permission, in addition to obtaining information under false pretenses." (*Id.* ¶¶ 14, 19, 26.)

Harris originally filed his Amended Complaint in the Circuit Court for the City of Richmond (the "Richmond Circuit Court"). (Not. Removal 1.) Mariner properly removed the action to this Court invoking the Court's federal question jurisdiction under 28 U.S.C. § 1331 because Harris's Amended Complaint seeks relief solely under the FCRA. *See* 28 U.S.C. § 1441(a).

After removing the case to this Court, Mariner filed the instant Motion to Compel Arbitration. Harris's Motion to Remand, Letter Motion, and his Motion to Dismiss followed. In response to Harris's Motion to Dismiss, Mariner filed the Motion to Strike.

**B.** **Allegations Related to the Arbitration Agreement**

Mariner attached the executed Loan Contract and Arbitration Agreement as exhibits to its Memorandum in Support of the Motion to Compel Arbitration. (*See* ECF No. 4-1.) Mariner

---

[11] The Loan Contract defines the Creditor-Seller as Auto By Design, LLC. (Loan Contract 1.)

4

also attached a sworn declaration (the "Declaration") from a Branch Manager attesting, under penalty of perjury, that the documents constituted "a true and authentic copy of the at-issue Retail Installment Sale Contract and its Addendum,[12] both executed by Lamont Harris on August 17, 2013." (Decl. 1, ECF No. 4-2.) The Declaration states that the Loan Contract and the Arbitration Agreement "comprise the entire agreement between Lamont Harris and the assignee, Mariner Finance, LLC." (*Id.* 2.)

The Arbitration Agreement specifies that the Federal Arbitration Act, 9 U.S.C. § 1 (the "FAA"), governs the Arbitration Agreement and that it broadly applies to

> any claim, dispute, or controversy (whether based upon contract, tort, intentional or otherwise, constitution, statute, common law, or equity and whether pre-existing, present or future), including initial claims . . . arising from or relating to: this contract . . . .the closing, servicing, collection, or enforcement of the contract; or the relationships that result from this contract (*Claim*)[.]

(Arbitration Agreement 1, ECF No. 4-1.) The Arbitration Agreement excludes certain claims from the scope of this broad application, stating:

> (1) we may exercise lawful self-help remedies (such as repossession of collateral) and we may proceed in court for garnishment, repossession, replevin, and foreclosure remedies; and (2) you or we may bring a lawsuit in court to recover up to $5,000.00 (including costs and attorneys' fees) for yourself or ourselves only, not for any class or group of persons having similar claims. . . . We also agree not to elect to arbitrate an individual Claim you bring in small claims court or an equivalent court, so long as the Claim is pending only in that court.

(*Id.*) Although the Arbitration Agreement states that "[y]ou may reject this arbitration agreement . . . by sending a rejection notice . . . within 60 days after the date of this contract" to a specified address, nothing in the record indicates that Harris ever rejected the Arbitration Agreement. (*Id.*)

Rather, Harris maintains throughout his numerous filings that he never signed the Arbitration Agreement. (*See, e.g.,* Resp. Mot. Compel 1, ECF No. 7.) Harris also states that "he

---

[12] This Addendum is the Arbitration Agreement.

5

has never seen these statements, contacts [sic], agreements, nor even had any prior conversations with the defendants pertaining to any arbitration agreements." (*Id.* 2.) He avers that at the time he acted as a cosigner on the loan he "was actually working as a car salesman at a car dealership & are [sic] familiar and trained on handling arbitration agreements, contract agreements, etc." (Harris's Mot. Dismiss 3.) Although Harris maintains that his purported signature on the Arbitration Agreement constitutes a forgery, he provides nothing beyond his own assertions to support his forgery contention.

## II. Analysis
### The Court Will Grant the Motion to Compel Arbitration and Dismiss this Case to Allow Harris and Mariner to Arbitrate Harris's FCRA Claims[13]

### A. The Federal Arbitration Act

Congress passed the FAA "'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.'"

---

[13] In his Motion to Remand, Harris appears to argue that the Court must remand this matter to the Richmond Circuit Court because the FCRA has not completely pre-empted a state law cause of action. He states that "[t]he parties do not dispute that Plaintiff has not expressly invoked the FCRA or any other federal statute in the complaint." (Mot. Remand 4, ECF No. 7.)
Section 1441 defines the Court's removal jurisdiction and states:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). Here, it cannot be disputed that Harris's causes of action in the Amended Complaint all arise out of the FCRA. He entitles each of his claims "Violations of the Fair Credit Reporting Act" and grounds many of his arguments in the policies behind Congress's enactment of the FCRA. (*See generally* Am. Compl.) Therefore, his Amended Complaint falls squarely within the Court's federal question jurisdiction.
Also, Harris originally filed his Amended Complaint in the Richmond Circuit Court, which the United States District Court for the Eastern District of Virginia, Richmond Division "embrac[es]," as required by 28 U.S.C. § 1441(a). Because this matter meets both requirements of 28 U.S.C. § 1441(a), the Court may properly exercise jurisdiction over it. Therefore, the Court will deny the Motion to Remand.

*Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (quoting *Gilmer v. Interstate/ Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (alteration in original)). The FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 limits the scope of the FAA to written contracts involving commerce. *Id.* "The effect of th[is] section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Once a court determines that the parties entered into a written agreement to arbitrate the underlying dispute, Section 4 directs courts to compel arbitration if necessary. 9 U.S.C. § 4. The FAA gives district courts no discretion to do otherwise:

> By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. Thus, insofar as the language of the Act guides [the] disposition of [a] case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4) (emphasis in original); *see Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001); *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001).

**B.     The Court Will Grant the Motion to Compel Arbitration**

To compel arbitration under the FAA, Mariner must demonstrate:

(1) the existence of a dispute between the parties,[14] (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate

---

[14] Neither Harris nor Mariner contests that a dispute exists between them. Harris sued Mariner for alleged violations of the FCRA.

or foreign commerce,[15] and[,] (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute.[16]

*Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (quoting *Rota–McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 n.6 (4th Cir. 2012)). Harris's sole contention opposing the Motion to Compel Arbitration is that he did not sign the Arbitration Agreement, which implicates only the second prong of the test.

Courts apply these preliminary precepts when evaluating a motion to compel arbitration:

> While the Supreme Court has acknowledged a "liberal federal policy favoring arbitration," . . . it has also consistently held that [Section] 2 of the FAA reflects the "fundamental principle that arbitration is a matter of contract[ ]" . . . . Thus, a court may order arbitration only when it "is satisfied that the parties agreed to arbitrate." . . . And the question of whether the parties agreed to arbitrate is resolved by application of state contract law.

*Craddock v. LeClairRyan, P.C.*, No. 3:16cv11, 2016 WL 1464562, at *3 (E.D. Va. Apr. 12, 2016) (omissions and second alteration in original) (quoting *Lorenzo v. Prime Commc'ns, L.P.*,

---

[15] Harris appropriately does not dispute that the transaction between him and Mariner implicated interstate commerce. Courts have broadly construed the FAA's requirement that a transaction involve interstate commerce. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." (quoting *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273–74 (1995))); *Allied-Bruce Terminix Cos., Inc.*, 513 U.S. at 281 (holding that the FAA applies if "the 'transaction' in fact 'involv[ed]' interstate commerce, even if the parties did not contemplate an interstate commerce connection"). Relying on this broad interpretation, the Fourth Circuit has found that when a person purchases a car from a dealership relying on funds from a foreign source to finance the purchase, it "is sufficient to implicate the FAA." *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012).

Here, similar to the plaintiff in *Rota-McLarty*, Harris, a Virginia resident, co-signed a loan to purchase a car from a Virginia car dealership. However, the Virginia dealership assigned the Loan Contract and the Arbitration Agreement to Mariner, a foreign entity, at the same time that Harris made the purchase. Given the Supreme Court's broad interpretation of the FAA's interstate commerce requirement, and because the transaction involved a foreign entity, the car purchase at bar involved interstate commerce. *See Allied-Bruce Terminix Cos., Inc.*, 513 U.S. at 281; *Rota-McLarty*, 700 F.3d at 697.

[16] The facts at bar clearly meet this requirement. Mariner has moved to arbitrate the dispute between itself and Harris, and Harris has refused to do so.

806 F.3d 777, 781 (4th Cir. 2015)). Therefore, the Court turns to Virginia contract law to determine whether the Arbitration Agreement applies to Harris's FCRA claims.

### 1. A Valid Written Agreement Exists Between Harris and Mariner Because Harris Signed the Arbitration Agreement

To determine whether a "written agreement that includes an arbitration provision which purports to cover the dispute" exists between Harris and Mariner, the Court must first determine whether Harris entered into an agreement with Mariner to arbitrate claims arising from the contract at issue. *Galloway*, 819 F.3d at 84. The Fourth Circuit has stated that "if the dispute is over the very existence of the agreement to arbitrate, a district court, and not the arbitrator, must decide if the arbitration clause (indeed, the entire agreement) is enforceable against the parties." *Gregory v. Interstate/Johnson Lane Corp.*, 188 F.3d 501, at *7 (4th Cir. 1999) (table opinion) (citing *Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir. 1992); 9 U.S.C. §§ 2–4). Where a party to a contract "reasonably" claims that his or her signature on the contract constitutes a forgery, the Court, not the arbitrator must decide whether the contract may be enforced against that party because "the dispute over the forgery is not a dispute over the arbitrability of a merits-based issue, rather it is a dispute over an issue which itself goes to arbitrability." *See id.* at *7, *9. For this reason, "the district court must first pass on the question of whether" the party "is bound by the" Arbitration Agreement. *Id.* at *9. "If the district court makes this finding in the affirmative, then, and only then . . . the FAA require[s] the district court to send [the] . . . complaint to arbitration." *Id.*

Because the Court liberally reads Harris's claims as "reasonably" asserting that he did not sign the Arbitration Agreement, it must determine whether the terms of the Arbitration Agreement bind Harris. *See id.* at *7, *9. Throughout his many filings, Harris contends that he cannot be subject to arbitration because he did not sign the Arbitration Agreement. Harris

repeatedly accuses Mariner of submitting forged documents, stating that any document Mariner submitted that contains Harris's signature "should be carefully examined for forgery."[17] (Resp. Mot. Compel Arbitration 3.)

Despite Harris's persistent assertions that he did not sign the Arbitration Agreement, he provides no competent evidence to support his contention that he did not sign the Arbitration Agreement.[18] Although Harris maintains that he makes these contentions "under oath," he offered nothing to support this contention that the Court may consider. The two notarized documents he submitted, which do not include the "under oath" language, do not aid his contention. Specifically, the documents

> ha[ve] no jurat[19] and w[ere] merely acknowledged before a notary. An acknowledgment is used to verify a signature and to prove that an instrument was executed by the person signing it, whereas a jurat is evidence that a person has sworn as to the truth of the contents of the document. In an acknowledgment, unlike a jurat, the affiant does not swear under oath nor make statements under penalty of perjury.

---

[17] The Court notes that Harris's signature on the Arbitration Agreement looks similar to his signatures on the pages of the Loan Contract and on many of his filings before this Court. However, the signature that appears on Harris's Letter Motion clearly does not appear to match these other signatures.

[18] Harris attached a "Certified Witness Statement" of Ebony Goode to his Motion to Dismiss. (ECF No. 11.) However, in her statement, Ms. Goode states that she "was hired by the plaintiff, Lamont Harris in January 2017, in order to repair his credit report and to prepare him for a business loan proposal." (*Id.*) She states that she "contacted Mariner Finance LLC by writing into all 3 Major Credit Bureaus" and that "[u]nder oath, I can testify before the court that Mariner Finance LLC, never responded to my company disputes by writing or electronic means." (*Id.*) While Harris may attempt to use this statement to support his contentions that Mariner violated the FCRA, it has no bearing on the Court's decision regarding the Motion to Compel Arbitration.

[19] A jurat is "the official statement added to an affidavit" and "uses the words subscribed and sworn." *Strong v. Johnson*, 495 F.3d 134, 140 (4th Cir. 2007) (internal quotation marks and citations omitted). "Oaths are only required when a notary's statement is a jurat, which means that the affiant has sworn to the truth of the document's contents." *Id.*

10

*Tharrington v. Dir., Va. Dep't. of Corrs.*, No. 3:14cv720, 2015 WL 4606174, at *16 n.7 (E.D. Va. 2015) (citing *Strong*, 495 F.3d at 140; *Goode v. Gray*, No. 3:07cv189, 2009 WL 255829, at *2 n.6 (E.D. Va. 2009)). Because Harris did not swear to the contents of these documents, they "fail[] to constitute admissible evidence." *Id.* at *7.

Mariner, however, submitted the Arbitration Agreement along with the Declaration, made under penalty of perjury,[20] stating that the Loan Contract and the Arbitration Agreement constitute a "true and authentic copy of the at-issue" Loan Contract and Arbitration Agreement, "both executed by Lamont Harris."[21] (Decl. 1.) Because Harris has not submitted any admissible evidence to support his contention that he did not sign the Arbitration Agreement

---

[20] Although a notary did not sign the Declaration, Mariner may support its contention that Harris signed the Arbitration Agreement with this unsworn declaration made under penalty of perjury because 28 U.S.C. § 1746 states:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: . . .
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "*I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)*".

28 U.S.C. § 1746(2) (emphasis added). The Branch Manager who signed the Declaration included this required language. (*See* Decl. 2.)

[21] Harris attempts to support his claim that Mariner submitted forged documents to this Court by pointing out that the copy of the Loan Contract that Mariner submitted includes redactions. He states "Mariner filed an edited copy of the contract with 'blacked' out areas such as the contract number, the vin number of the vehicle and dealership contact information. [] Vital information that shouldn't be hidden or concealed before the court." (Harris's Mot. Dismiss 2.) Harris attached an unredacted version of the Loan Contract.

11

submitted by Mariner and Mariner has provided evidence that he did so, the Court will conclude that Harris signed the Arbitration Agreement. *See Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 349 (D. Md. 2015) (granting a motion to compel arbitration after the plaintiff claimed that she had not signed the agreement containing the arbitration notice and denying discovery on the issue because the plaintiff had not "presented an affidavit, a declaration, or some other admissible evidence unequivocally showing that she disputes the existence or validity of her . . . debt.") Given its own observation about the signatures before it, the Court experiences little reluctance in so finding. Therefore, the Court concludes that the Arbitration Agreement creates a valid written agreement as contemplated by the FAA.

### 2. The Arbitration Agreement Covers Harris's FCRA Claims

In order for the FAA to apply, the "written agreement" must not only exist, but it must "purport[] to cover the dispute." *Galloway*, 819 F.3d at 84. Here, the Arbitration Agreement broadly applies to

> any claim, dispute, or controversy (whether based upon contract, tort, intentional or otherwise, constitution, statute, common law, or equity and whether pre-existing, present or future), including initial claims . . . arising from or relating to: this contract . . . .the closing, servicing, collection, or enforcement of the contract; or the relationships that result from this contract (*Claim*)[.]

(Arbitration Agreement 1, ECF No. 4-1.) Although it exempts certain claims from its scope, none of the exclusions apply here because Harris seeks relief for Mariner's violations of the

---

Local Rule 7 requires that persons filing items with the Court redact "personal identifiers." E.D. Va. Loc. Civ. R. 7(C). Local Rule 7(C)(2) states that "[t]he responsibility for redacting personal identifiers rests solely with counsel and the parties" and warns "[c]ounsel and the parties are cautioned that failure to redact these personal identifiers may subject them to sanctions." *Id.*
The redacted information—the dealer number, the contract number, and the vehicle's identification number—constitute "personal identifiers" within the scope of Local Rule 7. *Id.* Such redactions do not suggest forgery. Because Harris did not redact that information, the Court directs the Clerk to place the copies of the loan contract he submitted, (ECF Nos. 9, 11-1) under seal.

FCRA, which are not exempted. He also seeks damages in the amount of at least $250,000, (Am. Compl. 6), well over the $5,000 limit set in the Arbitration Agreement, (Arbitration Agreement 1). Further, Harris did not file his Amended Complaint in small claims court.

"[T]he Supreme Court has acknowledged a 'liberal federal policy favoring arbitration.'"[22] *Craddock*, 2016 WL 1464562 at *3 (quoting *Lorenzo*, 806 F.3d at 781). Further, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24. To determine whether Harris's FCRA claims fall within the scope of the Arbitration Agreement, the Court must apply Virginia contract law.

Under Virginia law, "[c]ontracts are construed as written, without adding terms that were not included by the parties." *TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 557 S.E.2d 199, 200 (Va. 2002) (citing *Wilson v. Holyfield*, 313 S.E.2d 396, 398 (Va. 1984)). "Where the terms in a contract are clear and unambiguous the contract is construed according to its plain meaning." *Id.* (citing *Bridgestone/Firestone v. Prince William Square Assocs.*, 463 S.E.2d 661, 664 (Va. 1995); *Ross v. Craw*, 343 S.E.2d 312, 316 (Va. 1986)). Virginia public policy also favors arbitration "and the validity of arbitration agreements." *Id.* at 202.

Here, the plain language of the Arbitration Agreement embodies application to a broad range of claims. Specifically, it applies to "any claim . . . arising from or relating to: this

---

[22] The Supreme Court has recognized a broad interpretation of the United States' Constitution's Commerce Clause in interpreting arbitration agreements. Specifically, the Supreme Court stated "[w]e have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank*, 539 U.S. at 56 (quoting *Allied–Bruce Terminix Cos.*, 513 U.S. at 273–274). Further, the *Citizens Bank* court maintained that "[b]ecause the statute provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause . . . it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce'—that is, 'within the flow of interstate commerce.'" *Id.* (internal citations omitted).

13

contract . . . or the relationships that result from this contract." (Arbitration Agreement 1.) Giving plain meaning to these terms, Harris's FCRA claims, which arise out of the relationship between him and Mariner as created by the Loan Contract and the Arbitration Agreement, fall within the scope of the Arbitration Agreement. *See Roach*, 165 F. Supp. 3d at 348 (stating that "the Court has little difficulty concluding that the[ plaintiff's FCRA claims] would be covered: the agreements are drafted to encompass any claim, dispute, or controversy arising from or relating to the notes, including statutory and regulatory claims.")

Because Harris's FCRA claims fall entirely within the scope of the Arbitration Agreement and the Arbitration Agreement creates a valid "written agreement" as contemplated by the FAA, *see Galloway*, 819 F.3d at 84, the Court concludes that the second requirement to apply the FAA is satisfied. Therefore, the dispute between Harris and Mariner meets all the requirements to apply the FAA, *see id.*, and the Court must require Harris and Mariner to arbitrate Harris's FCRA claims,[23] *Dean Witter Reynolds, Inc.*, 470 U.S. at 218 (citing 9 U.S.C. §§ 3, 4) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.")

### C. The Court Will Exercise Its Discretion to Dismiss the Action

"A court may dismiss or stay a suit that is governed by the FAA." *Chronister v. Marks & Harrison, P.C.*, No. 3:11cv688, 2012 WL 966916, at *2 (E.D. Va. Mar. 21, 2012) (citing

---

[23] In Harris's Motion to Dismiss, Harris reiterates his contention that Mariner submitted forged documents in support of its Motion to Compel Arbitration and maintains that he never signed the Arbitration Agreement. Based on this, Harris asks the Court to grant "immediate [j]udgment in the favor of the Plaintiff." (Harris's Mot. Dismiss 6.) In response to Harris's Motion to Dismiss, Mariner filed its Motion to Strike stating that "this case is not yet ripe to reach any merits-based judgment." (Mot. Strike 2, ECF No. 13.)

Because, based on the Arbitration Agreement, the Court must require Harris and Mariner to arbitrate this dispute, the Court will deny as moot Harris's Motion to Dismiss and Mariner's Motion to Strike.

14

9 U.S.C. § 3; *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001)). When a party seeks enforcement of an arbitration agreement in district court, the party sufficiently "invoke[s] the full spectrum of remedies under the FAA, including a stay under [9 U.S.C.] § 3." *Choice Hotels*, 252 F.3d at 710. However, if a court determines "that all of the issues presented are arbitrable, then it may dismiss the case." *Greenville Hosp. Sys. v. Emp. Welfare Ben. Plan for Emps. of Hazelhurst Mgmt. Co.*, 628 F. App'x 842, 845–46 (4th Cir. 2015) (citing *Choice Hotels*, 252 F.3d at 709–10). The law remains unsettled as to whether a court should stay or dismiss a case when all claims are subject to arbitration,[24] but no question exists that the Court has the discretion to take either option. *Choice Hotels*, 252 F.3d at 709–10. Here, because the Court has found that all of Harris's claims are subject to arbitration, it will exercise its discretion to dismiss the case without prejudice.

---

[24] As the Fourth Circuit noted:

> There may be some tension between our decision in [*Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999)]—indicating that a stay is required when the arbitration agreement "covers the matter in dispute"—and *Choice Hotels*—sanctioning dismissal "when all of the issues presented . . . are arbitrable." Our sister circuits are divided on whether a district court has discretion to dismiss rather than stay an action subject to arbitration.

*Aggarao, Jr. v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012).

### III. Conclusion

For the foregoing reasons, the Court will grant the Motion to Compel Arbitration and dismiss this action without prejudice. The Court will also deny the Motion to Remand and the Letter Motion. Finally, the Court will deny as moot Harris's Motion to Dismiss and Mariner's Motion to Strike.

An appropriate order shall issue.

/s/ MHL
M. Hannah Lauck
United States District Judge

Date: 8/28/2019
Richmond, Virginia